942 A.2d 136 (2008)
398 N.J. Super. 489
Ric MALIK and Karen S. Malik, b/w, Plaintiffs-Respondents,
v.
A. Fred RUTTENBERG, Esquire, Blank & Rome, LLC, Defendants, and
American Arbitration Association and Peter Liloia, III, Esquire, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 2007.
Decided March 3, 2008.
Reargued[1] February 6, 2008.
*137 Thomas D. Rees of the Pennsylvania bar, Philadelphia, PA, admitted pro hac vice, argued the cause for appellants (James B. Shrimp (High, Swartz, Roberts *138 & Seidel), attorney; Mr. Rees, of counsel and on the brief; Mr. Shrimp and Joo Y. Park, on the brief).
David S. Hochman, Cherry Hill, argued the cause for respondents.
Before Judges CUFF, LISA and LIHOTZ.
The opinion of the court was delivered by
CUFF, P.J.A.D.
In this appeal we address whether N.J.S.A. 2A 23B-14a immunizes defendants American Arbitration Association (AAA) and Peter Liloia, III, from civil liability for personal injuries sustained by plaintiff Ric Malik due to an alleged physical assault that occurred during a recess in a commercial arbitration proceeding. We granted leave to appeal an order denying defendants' motion to dismiss and reverse.
The facts are straightforward and undisputed. Plaintiff Ric Malik entered into a contract to perform substantial renovations to a home in Moorestown in 2003. A serious dispute arose between Malik and the homeowners. In accordance with the contract between the parties, the dispute was submitted to arbitration pursuant to the rules established by defendant AAA. Liloia was appointed as the arbitrator.
The arbitration was protracted and contentious. On November 17, 2005, the attorney representing Malik in the arbitration objected to the actions of one of the attorneys representing the homeowners and urged Liloia to remove him from the proceeding. Liloia denied the request and called a brief recess. During the recess, Malik alleges that the attorney who he sought to eject from the proceedings assaulted him in the lobby. Liloia did not observe the altercation and the altercation did not occur in the room where the arbitration proceeding was being conducted.
In his complaint, Malik asserts that defendants AAA and Liloia knew of the dangerous propensities of the homeowner's attorney but failed to exercise reasonable care to control these tendencies. Following denial of defendants' initial motion to dismiss, AAA and Liloia filed an answer in which they asserted that N.J.S.A. 2A:2314 immunized them from liability. On June 5, 2007, defendants renewed their motion to dismiss. The motion judge referred to the affidavit of merit filed by plaintiffs, which stated that defendants had a duty to control the proceedings and the failure to do so "falls outside of the scope of arbitral immunity." Therefore, finding that plaintiffs had pled "a viable cause in tort against the defendants," the motion judge denied defendants' renewed motion to dismiss.
Rule 4:6-2(e) permits litigants, prior to the filing of a responsive pleading, to file a motion to dismiss an opponent's complaint, counterclaim, cross-claim, or third-party complaint for "failure to state a claim upon which relief can be granted." The Supreme Court has explained the proper analytical approach to such motions in. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989), and its progeny. The motion judge must accept as true all factual assertions in the complaint. Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 268-69, 839 A.2d 850 (2004). The judge must also accord to the non-moving party every reasonable inference from those facts. Id. at 282, 839 A.2d 850. The complaint must be examined "`in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim.'" Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31 (quoting *139 Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App. Div.1957)).
This court applies the same standard as the trial court to determine whether to grant or deny a motion to dismiss for failure to state a claim. Donato v. Moldow, 374 N.J.Super. 475, 483, 865 A.2d 711 (App.Div.2005); Seidenberg v. Summit Bank, 348 N.J.Super. 243, 250, 791 A.2d 1068 (App.Div.2002). Thus, like the trial court, this court must accept as true the facts alleged in the complaint, and credit all reasonable inferences of fact therefrom, to ascertain whether there is a claim upon which relief can be granted. Donato, supra, 374 N.J.Super. at 483, 865 A.2d 711; Seidenberg, supra, 348 N.J.Super. at 250, 791 A.2d 1068.
Whether a common law or statutory immunity applies to a party is a question of raw. Norris v. Borough of Leonia, 160 N.J. 427, 438, 734 A.2d 762 (1999) (citing State v. Culver, 23 N.J. 495, 129 A.2d 715 (1957)). If an immunity applies and bars civil liability, it trumps any theory of negligence. Pico v. State of New Jersey, 116 N.J. 55, 62-63, 560 A.2d 1193 (1989). A motion to dismiss filed early in a proceeding is a particularly effective device to resolve any claim of immunity. Wildoner v. Borough of Ramsey, 162 N.J. 375, 387, 744 A.2d 1146 (2000).
As a general matter, it is New Jersey's long-standing policy to favor arbitration as a speedy and efficient approach to dispute resolution. Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131, 773 A.2d 665 (2001); Block v. Plosia, 390 N.J.Super. 543, 551, 916 A.2d 475 (App.Div.2007). The revised New Jersey Arbitration Act (NJAA),[2]N.J.S.A. 2A:23B-1 to -32, codifies this policy favoring arbitration. For example, the NJAA precludes judicial interference with an arbitrator's award except in extremely limited circumstances. N.J.S.A. 2A:23B-23. The NJAA also expressly equates arbitrators with judges for liability purposes. It provides that "rain arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this State acting in a judicial capacity." N.J.S.A. 2A:23B-14a. N.J.S.A. 2A:2313-1 defines an "arbitrator" as "an individual appointed either as a neutral arbitrator or as a party arbitrator to render an award . . . in a controversy that is subject to an agreement to arbitrate." N.J.S.A. 2A:23B-1. The NJAA defines an "arbitration organization" as "an association, agency, board, commission or other entity that is neutral and initiates, sponsors or administers an arbitration proceeding or is involved in the appointment of an arbitrator." Ibid. There is no dispute that AAA and Liloia are, respectively, an arbitration organization and an arbitrator.
The NJAA further provides that the arbitration immunity provision "supplements any immunity pursuant to other law." N.J.S.A. 2A:23B-14b. Accordingly, this court will examine state and federal common law to define the bounds of an arbitrator's immunity.
"`Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction.'" Cleavinger v. Saxner, 474 U.S. 193, 199, 106 S.Ct. 496, 499-500, 88 L.Ed.2d 507, 513 (1985) (quoting Pierson v. Ray, 386 U.S. 547, 553-54, 87 *140 S.Ct. 1213, 1217, 18 L.Ed.2d 288, 294 (1967)). This immunity is absolute, Burns v. Reed, 500 U.S. 478, 499, 111 S.Ct. 1934, 1946, 114 L.Ed.2d 547, 567 (1991) (Scalia, J., concurring in judgment in part and dissenting in part); K.D. v. Bozarth, 313 N.J.Super. 561, 568, 713 A.2d 546 (App. Div.), certif denied, 156 N.J. 425, 719 A.2d 1023 (1998), and attaches at the outset of civil proceedings. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9, 14 (1991) (citations omitted). The doctrine "is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391, 399 (1993); see also Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646, 649 (1872); Bozarth, supra, 313 N.J.Super. at 568, 713 A.2d 546.
The common law extended absolute judicial immunity to the work of quasi-judicial figures like arbitrators. See Austern v. Chi. Bd. Options Exch., Inc., 898 F.2d 882, 886 (2d Cir.) (collecting federal appellate decisions), cert. denied, 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990); Levine v. Wiss & Co., 97 N.J. 242, 250, 478 A.2d 397 (1984); P.T. v. Richard Hall Cmty. Mental Health Ctr., 364 N.J.Super. 546, 551, 837 A.2d 427 (Law Div.2000). "`[T]he touchstone for its applicability was performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" Antoine, supra, 508 U.S. at 433 n. 8, 113 S.Ct. at 2170 n. 8, 124 L.Ed.2d at 398 n. 8 (quoting Burns, supra, 500 U.S. at 500, 111 S.Ct. at 1946, 114 L.Ed.2d at 567).
Immunity of judicial or quasi-judicial officers attaches only to the "judicial acts" performed within the individual's subject matter jurisdiction. Bozarth, supra, 313 N.J.Super. at 568, 713 A.2d 546; see Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2D 555, 565 (1988). The United States Supreme Court "has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity." Forrester, supra, 484 U.S. at 227, 108 S.Ct. at 544, 98 L.Ed.2d at 565. Nonetheless, it continues to adhere to the view that "`[w]hether the act done by [a judge] was judicial or not is to be determined by its character, and not by the character of the agent.'" Id. at 228, 108 S.Ct. at 544, 98 L.Ed.2d at 566 (quoting Ex parte Virginia, 100 U.S. 339, 348, 25 L.Ed. 676, 680 (1880)). To determine its character, the reviewing court should scrutinize the nature of the act and the expectations of the parties, "whether it is a function normally performed by a judge . . . [and] whether [the parties] dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331, 342 (1978).
For example, the Supreme Court has held that absolute judicial immunity does not attach to a judge's "administrative" decision to fire a court employee, Forrester, supra, 484 U.S. at 229-30, 108 S.Ct. at 545-46, 98 L.Ed.2d at 566-67, or to select the trial jurors for an entire county in a discriminatory manner, Ex parte Virginia, supra, 100 U.S. at 348, 25 L.Ed. at 680. Likewise, a court panel's "legislative" promulgation of a legal code of ethics could not be protected by judicial immunity. Supreme Court of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 736, 100 *141 S.Ct. 1967, 1977, 64 L.Ed.2d 641, 656 (1980).
An alleged wrongful act does not expose a judge to liability so long as the act was undertaken in his or her judicial capacity, and not in "the complete absence of all jurisdiction." Mireles, supra, 502 U.S. at 11-12, 112 S.Ct., at 286, 116 L.Ed.2d at 14. Judicial immunity attaches even to conduct "in excess of [the judge's] authority." Stump, supra, 435 U.S. at 356, 98 S.Ct. at 1105, 55 L.Ed.2d at 339. For example, in Mireles, supra, the Court granted a motion to dismiss the claim against a judge who had instructed police officers ""to forcibly and with excessive force seize and bring"" the plaintiff to his courtroom. 502 U.S. at 10-11, 112 S.Ct. at 286, 116 L.Ed.2d at 13-14.
In Stump, supra, the defendant judge approved a mother's ex parte petition to sterilize her teenage daughter. 435 U.S. at 351-53, 98 S.Ct. at 1102-03, 55 L.Ed.2d at 336-37. Justice White noted that the judge's authority to approve the petition fell within the state statute's broad grant of jurisdiction. Id. at 357-58, 98 S.Ct. at 1105-06, 55 L.Ed.2d at 339-40. Furthermore, Justice White concluded that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. at 359, 98 S.Ct. at 1106, 55 L.Ed.2d at 341. Beyond grievous procedural errors, judicial immunity protects even the judge acting with malice or corruption. See, e.g., Bradley, supra, 80 U.S. (13 Wall.) at 349-52, 20 L.Ed. at 650-51 (immunizing a trial court judge's decision to disbar an attorney for personal insults because the power to disbar was "possessed by all courts which have authority to admit attorneys to practice").
Plaintiffs' attempt to characterize Liloia's failure to control the homeowner's attorney as an abdication of his judicial or quasi-judicial authority is unavailing. We can think of no more judicial function than controlling the proceedings. Indeed, the N.J. Court Rules, 1969 bestow considerable authority on the judge to determine the conduct of the proceedings. A judge has the authority to determine the order in which witnesses shall be called, the order in which issues will be presented, and whether separate actions may be consolidated in a single proceeding. See R. 4:38-2 (authority to order separate trial of any claim, cross-claim, third-party claim or counterclaim and authority to sever liability and damage claims); R. 4:38-1 (authority to consolidate separate actions involving a common question of law or fact arising out of the same transaction). This authority extends to the basic management of the proceeding, and the trial judge possesses wide discretion to control the trial, including imposing sanctions on an attorney or party or expelling a spectator. State v. Castoran, 325 N.J.Super. 280, 285, 739 A.2d 97 (App.Div.1999) (citing Ryslik v. Krass, 279 N.J.Super. 293, 297, 652 A.2d 767 (App.Div.1995)), certif denied, 163 N.J. 78, 747 A.2d 286 (2000); Binkewitz v. Allstate Ins. Co., 222 N.J.Super. 501, 510, 537 A.2d 723 (App.Div.) (citing Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 225 (1954)), certif denied, 113 N.J. 378, 550 A.2d 481 (1988).
Similarly, the statute extends the immunity to the arbitral organization. To do otherwise renders the immunity afforded the arbitrator illusory. Corey v. N.Y. Stock Exch., 691 F.2d 1205, 1211 (6th Cir. 1982).
Notably, the common law also recognizes an immunity from civil liability for the arbitral organization. Recently, a federal appellate tribunal canvassed the country *142 and pronounced that "[e]very other circuit that has considered the issue of arbitral immunity recognizes the doctrine.. These courts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration." Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158-59 (10th Cir.2007) (citations omitted). Thus, it is clear that an arbitration association, like AAA, "enjoys arbitral immunity from civil liability for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings." Hawkins v. Nat'l Ass'n of Sec. Dealers Inc., 149 F.3d 330, 332 (5th Cir. 1998) (alleged conspiracy with litigant and failure to supervise litigant insufficient to overcome arbitral immunity).
The act of calling a recess and denying an application to remove an attorney from an arbitration proceeding falls directly within the adjudicative functions of the arbitrator. Once the threshold issue of the applicability of the statutory arbitral immunity has been resolved in favor of the arbitrator and the arbitral organization, the complaint must be dismissed. It is of no legal consequence that the arbitrator may have exercised his authority differently. Immunity trumps liability. We, therefore, reverse the July 18, 2007 order denying defendants AAA's and Liloia's motion to dismiss the complaint.
Reversed.
NOTES
[1] Reargument was required by Rule 2:13-2(b) when a third judge joined the opinion and oral argument was not waived.
[2] The parties agreed in May 2003 to arbitrate any dispute flowing from the construction contract. Accordingly, the revised statute, effective January 1, 2003, governs this appeal. N.J.S.A. 2A:23B-3a; Kimm v. Blisset, LLC, 388 N.J.Super. 14, 28, 905 A.2d 887 (App.Div. 2006), certif. denied, 189 N.J. 428, 915 A.2d 1051 (2007).